1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8
9
10

CAROLE LAROCHE,

Plaintiff,

v.

TED D. BILLBE, et al.,

Defendants.

C13-1913 TSZ

ORDER

11       THIS MATTER comes before the Court on defendants' motion for partial

12  summary judgment, docket no. 17.  Having reviewed all papers filed in support of, and in

13  opposition to, defendants' motion,[1] the Court enters the following order.

14  **Background**

15       Plaintiff Carole LaRoche brings this action against her former attorney, Ted D.

16  Billbe, who represented her in dissolution proceedings against Alan Hoffman.  Hoffman

17  and LaRoche were wed in August 2000; their marriage was dissolved in October 2010.

18  LaRoche alleges that Billbe's legal services were deficient in several regards, including a

19  failure to assert that a prenuptial agreement between LaRoche and Hoffman had been

20

21  [1] Plaintiff's motion to strike, docket no. 21, Paragraphs 10, 13, & 14 of the Declaration of Ted D. Billbe,
22  docket no. 18, is DENIED.  Defendants' motion to strike, docket no. 26, the Declaration of Emmelyn
    Hart, docket no. 23, is also DENIED.  The Court has considered the declarations to the extent appropriate.

23

ORDER - 1

rescinded by their conduct during the marriage.  *See* Compl. at ¶¶ 4.1(A) & (C) (docket no. 1).  Defendants' motion for partial summary judgment is focused solely on this allegation concerning the prenuptial agreement.

The prenuptial agreement provided that, in the event of a dissolution, each party would receive his or her separate property, neither party would be entitled to payment for support or other maintenance, personal service earnings during the marriage would be treated as community property, except that LaRoche could accumulate up to $75,000 of her earnings in a separate property account, and Hoffman would make contributions to an individual retirement account that would be community property awarded to LaRoche upon dissolution.  *See In re Marriage of Hoffman*, 2012 WL 1699455 at *1 (Wash. Ct. App. May 14, 2012).  During trial before the King County Superior Court, Billbe argued, on behalf of LaRoche, that the prenuptial agreement was not enforceable.

Under Washington law, a prenuptial agreement is first tested for substantive fairness, *i.e.*, whether the agreement makes "fair and reasonable provision for the party not seeking enforcement of the agreement."  *In re Marriage of Matson*, 107 Wn.2d 479, 482, 730 P.2d 668 (1986).  If the prenuptial agreement is substantively fair, then the analysis ends and the agreement is deemed enforceable.  *Id.*  If the agreement fails the substantive inquiry, then it must be evaluated for procedural fairness, pursuant to which a court must assess (i) whether full disclosure was made concerning the amount, character, and value of the property involved, and (ii) whether the parties entered into the agreement voluntarily, on independent advice, and with full knowledge of their rights.  *Id.* at 483.  In the underlying action, the King County Superior Court concluded that the prenuptial

1  agreement at issue was both substantively and procedurally fair.  Ex. 9 to Billbe Decl.

2  (docket no. 18-1 at 59).

3       The King County Superior Court entered judgment in favor of LaRoche in the

4  amount of $568,000, together with attorney fees in the amount of $70,000.  Ex. 10 to

5  Billbe Decl. (docket no. 18-1 at 68).  The award consisted of fifty percent (50%) of the

6  stipulated value of a personal residence (the "Trilogy" home), reimbursement in the

7  amount of $75,000 for the increase in value of a residence sold during the marriage (the

8  "Woodinville" house), and compensation in the amount of $5,500 for LaRoche's labor in

9  preparing the Woodinville house for sale.  *Id.* (docket no. 18-1 at 70-71).  Hoffman

10  unsuccessfully appealed, contending that both the Trilogy home and Woodinville house

11  were his separate property.  On cross-appeal, LaRoche was represented by a different

12  attorney and argued that the trial court erred in concluding that the prenuptial agreement

13  was enforceable, adding to the substantive and procedural challenges an argument that

14  the agreement had been rescinded by the postnuptial conduct of the parties.  In affirming

15  the King County Superior Court's judgment, the Washington State Court of Appeals

16  declined to address the rescission issue because it had been raised for the first time on

17  appeal.  2012 WL 1699455 at *3.

18  **Discussion**

19  **A.**     **Summary Judgment Standard**

20       The Court shall grant summary judgment if no genuine issue of material fact exists

21  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

22  The moving party bears the initial burden of demonstrating the absence of a genuine issue

23

1   of material fact.  _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).  A fact is material if

2   it might affect the outcome of the suit under the governing law.  _Anderson v. Liberty_

3   _Lobby, Inc._, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

4   adverse party must present affirmative evidence, which "is to be believed" and from

5   which all "justifiable inferences" are to be favorably drawn.  _Id._ at 255, 257.  When the

6   record, however, taken as a whole, could not lead a rational trier of fact to find for the

7   non-moving party, summary judgment is warranted.  _See Celotex_, 477 U.S. at 322.

8   **B.**   **Legal Malpractice**

9        To establish a claim for legal malpractice, a plaintiff must prove the following four

10  elements:  (i) the existence of an attorney-client relationship giving rise to a duty of care

11  on the part of the attorney toward the client; (ii) an act or omission by the attorney in

12  breach of such duty of care; (iii) damage to the client; and (iv) a causal link between the

13  attorney's breach of duty and the damage incurred.  _E.g._, _Hizey v. Carpenter_, 119 Wn.2d

14  251, 260-61, 830 P.2d 646 (1992).  Washington courts apply an "attorney judgment rule,"

15  pursuant to which "mere errors in judgment or in trial tactics do not subject an attorney to

16  liability for legal malpractice."  _Halvorsen v. Ferguson_, 46 Wn. App. 708, 717, 735 P.2d

17  675 (1986); _see_ _Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C._, --- Wn.

18  App. ---, 324 P.3d 743 (2014).  The "attorney judgment rule" has particular relevance

19  when the alleged error involves an "uncertain, unsettled, or debatable proposition of

20  law."  _Halvorsen_, 46 Wn. App. at 717.

21       To combat the "attorney judgment rule," a malpractice plaintiff must show either

22  (a) the attorney's judgment was "not within the range of reasonable choices from the

23

ORDER - 4

perspective of a reasonable, careful and prudent attorney in Washington," or (b) even if the decision was within the range of reasonable choices, the attorney breached the standard of care in making the decision.  <u>Clark County</u>, 324 P.3d at 752-53.  To establish that the attorney's judgment was outside the range of reasonable choices, the plaintiff must do more than present opinions from experts who disagree with the decision; the plaintiff must submit evidence that "no reasonable Washington attorney would have made the same decision as the defendant attorney."  <u>Id.</u> at 752.  If the plaintiff proffers sufficient evidence to demonstrate a factual issue as to whether the judgment was within the range of reasonable choices and/or was the product of negligence, then the matter must be decided by a jury.  <u>Id.</u> at 753.

In the legal malpractice arena, Washington courts strictly adhere to the "but for" standard of causation.[2]  <u>Daugert v. Pappas</u>, 104 Wn.2d 254, 260-63, 704 P.2d 600 (1985); <u>Nielson v. Eisenhower & Carlson</u>, 100 Wn. App. 584, 591-94, 999 P.2d 42 (2000).  In most instances, the question of "but for" causation is one of fact for a jury.  <u>Daugert</u>, 104 Wn.2d at 257.  For example, when the alleged malpractice consists of an error during trial, the cause-in-fact issue to be decided by the jury is whether the client would have fared better "but for" the attorney's mishandling.  <u>Id.</u> at 257-58.  The jury in the malpractice action must evaluate what a reasonable trier of fact would have done "but

---

[2] Washington law recognizes two components of proximate causation, namely cause in fact and legal causation.  <u>Brust v. Newton</u>, 70 Wn. App. 286, 292, 852 P.2d 1092 (1993) (citing <u>Hartley v. Wash.</u>, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)).  Cause in fact refers to the consequences of an act or omission; legal causation involves the question of whether liability should attach to the act or omission in light of policy considerations, common sense, logic, precedent, and concepts of justice.  <u>Hartley</u>, 103 Wn.2d at 778-79.  The "but for" standard applies to the cause-in-fact side of the proximate cause equation.  <u>Id.</u> at 778.

ORDER - 5

1    for" the attorney's negligence.  *Id.* at 258.  This methodology applies even if the fact

2    finder in the underlying case was a judge rather than a jury.  *Brust*, 70 Wn. App. at 287,

3    291-94.

4         In *Brust*, the malpractice plaintiff, William Brust, had been a party to a prenuptial

5    agreement drafted by the defendant attorney, Henry T. Newton.  When Brust was in the

6    midst of a dissolution proceeding, he was advised by other lawyers that the prenuptial

7    agreement was probably not enforceable because of both substantive and procedural

8    unfairness.  *Id.* at 287-88 & n.1.  As a result, Brust abandoned attempts to enforce the

9    prenuptial agreement and settled the dissolution proceeding.  *Id.* at 288.  He then sought

10   damages against Newton.  The trial court concluded that the issue of negligence was for

11   the jury and the issues of proximate cause and damages were for the judge, but the trial

12   court submitted the latter two issues to the jury so that a retrial would not be required if

13   the bifurcation of decision-making responsibilities was reversed on appeal.  *Id.* at 288-89.

14   The jury found Newton negligent and awarded $46,364.47 in damages to Brust; the trial

15   court calculated a different amount and entered judgment for $439,084.  *Id.* at 289.

16        On appeal, in an effort to preserve the judgment, Brust argued that, because

17   dissolution actions must be tried to a judge, *see* RCW 26.09.010(1), the questions of

18   proximate cause and damages in a malpractice action must likewise be decided by a

19   judge.  70 Wn. App. at 290.  The Washington State Court of Appeals disagreed,

20   reasoning that a case of malpractice, even though it involves the drafting of a prenuptial

21   agreement, is not a dissolution action, but rather an action in tort, as to which the right to

22   jury trial remains inviolate.  *Id.* at 289-91 (citing Wash. Const. Art. 1, § 21).  The *Brust*

23

1   Court explained that, in computing the amount of spousal support or dividing assets in a

2   dissolution proceeding, the judge is deciding questions of fact, not law.  <u>Id.</u> at 294.  The

3   jury in a subsequent malpractice action may determine what the result should have been

4   in the dissolution proceeding "but for" the alleged negligence even though the original

5   trier of fact was a judge.  <u>Id.</u> at 293 ("there is no reason why a jury cannot replicate the

6   judgment of another fact-finder, whatever its composition").

7         In contrast, when the proximate cause issue in a malpractice action involves legal

8   expertise, the question whether, "but for" the attorney's negligence, the client would have

9   achieved a better result must be answered by a judge.  For example, in <u>Daugert</u>, the client

10  prevailed in the trial court, but received an unfavorable ruling from the appellate court,

11  and despite the client's immediately issued instructions, the attorney delayed in filing a

12  petition for discretionary review by the Washington State Supreme Court and missed the

13  deadline for doing so by one day.  104 Wn.2d at 255-56.  In the subsequent malpractice

14  action, the trial court submitted the issue of proximate cause to the jury, which found a

15  twenty percent (20%) probability that the Supreme Court would have granted review and

16  reversed the unfavorable ruling.  <u>Id.</u> at 256.  Judgment was entered against the attorney

17  for $71,341.84, which was twenty percent (20%) of the damages incurred by the client

18  plus the $5,000 retainer paid to the attorney to handle the underlying appeal; the attorney

19  did not dispute that the retainer should have been refunded.  <u>Id.</u> at 257 & n.1.  On appeal,

20  transferred pursuant to Washington Rule of Appellate Procedure 4.4, the Supreme Court

21  reversed, concluding that the cause-in-fact inquiry, which required "an analysis of the law

22  and the rules of appellate procedure," was "within the exclusive province of the court, not

23

ORDER - 7

1    the jury, to decide." *Id.* at 258.  The *Daubert* Court also clarified that the "but for" test

2    does not require certainty, but merely a showing that the alleged malpractice "more likely

3    than not" caused the damage.  *Id.* at 263.

4         A similar result was reached in *Nielson*.  In *Nielson*, the clients secured a favorable

5    judgment against Madigan Army Medical Center, but settled the matter while it was on

6    appeal for 85.5% of the award to avoid the risk of losing on a statute of limitations issue.

7    100 Wn. App. at 588.  In the subsequent malpractice action, the clients sought the

8    difference between the judgment and the settlement amount, asserting that the attorney

9    was negligent in advising them about the applicable limitation period.  The trial court

10   granted summary judgment in favor of the attorney and the Washington State Court of

11   Appeals affirmed, reasoning that the proximate cause question constituted an issue of law

12   requiring "special expertise," and that the attorney's negligence was not a "but for" cause

13   of the clients' loss.  *Id.* at 594-99.

14   **C.    Rescission of Prenuptial Agreement**

15        In this case, LaRoche contends that Billbe committed malpractice by failing to

16   advance the theory of rescission by conduct as a means of avoiding the effect of the

17   prenuptial agreement.  Under Washington law, the party seeking to enforce a prenuptial

18   agreement bears the burden of establishing that it has been "strictly observed in good

19   faith."  *In re Marriage of Fox*, 58 Wn. App. 935, 938, 795 P.2d 1170 (1990); *In re*

20   *Marriage of Sanchez*, 33 Wn. App. 215, 218, 654 P.2d 702 (1982).  In both *Fox* and

21   *Sanchez*, the prenuptial agreement was deemed rescinded by the parties' postnuptial

22   conduct.  In *Fox*, the wife transferred all of her separate funds to a community account,

23

and the funds were spent on *inter alia* improvements to the family home and the parties' living expenses; the husband inherited money during the course of the marriage and deposited it into the community account from which it was used by both parties for living expenses. 58 Wn. App. at 936-37. Because neither party observed the terms of the prenuptial agreement, evidencing the parties' mutual intent to abandon it, the *Fox* Court affirmed the trial court's decision that the agreement had been rescinded. *Id.* at 939-40.

Likewise, in *Sanchez*, the parties "did not mutually observe" the terms of the prenuptial agreement. 33 Wn. App. at 217. The agreement provided that each party's property acquired before marriage would remain separate, and it waived all rights arising "by virtue of the marital relation," including community property rights. *Id.* at 216. Approximately two years after the parties were wed, the wife pawned, among other items, a gold coin purchased before the marriage and then used the proceeds to make payment on the parties' home. *Id.* at 217. The husband subsequently redeemed the wife's pawned belongings and paid the premiums on a life insurance policy awarded to the wife prior to the marriage. *Id.* Moreover, both parties deposited funds, including the husband's personal income, into a joint account. *Id.* The *Sanchez* Court concluded that the wife, who sought to enforce the prenuptial agreement, was precluded from doing so by her own failure to observe the agreement in good faith. *Id.* at 218.

In moving for partial summary judgment, Billbe explains that he did not raise the issue of rescission in the dissolution proceeding because (i) it was unsupported by the evidence, LaRoche having testified in her deposition that she had adhered to all of the terms of the prenuptial agreement, and (ii) it would have undermined his credibility and

1    diverted attention away from the stronger arguments aimed at invalidating the prenuptial

2    agreement.  Billbe Decl. at ¶¶ 10-14 & Ex. 3 at 188:15-17 (docket no. 18).  Under the

3    "attorney judgment rule," to hold Billbe liable for any error in forming these judgments,

4    LaRoche must show that either (a) no reasonable Washington attorney would have made

5    the same decision, or (b) Billbe breached the standard of care in reaching this decision.

6    The evidence LaRoche has proffered indicates merely that her expert, Emmelyn Hart, a

7    partner at Lewis Brisbois Bisgaard & Smith, LLP who leads the firm's appellate practice,

8    believes Billbe "should have made the argument" that, because Hoffman did not observe

9    the terms of the prenuptial agreement, it was not enforceable.  _See_ Hart Decl. at ¶¶ 2 &

10   5(A) (docket no. 23).  Such testimony does not negate the "attorney judgment rule."  _See_

11   _Clark County_, 324 P.3d at 752 ("Merely providing an expert opinion that the judgment

12   decision was erroneous or that the attorney should have made a different decision is not

13   enough; the expert must do more than simply disagree with the attorney's decision.  The

14   plaintiff must submit evidence that no reasonable Washington attorney would have made

15   the same decision as the defendant attorney." (citations omitted)).  The Court HOLDS as

16   a matter of law that, pursuant to the "attorney judgment rule," LaRoche's malpractice

17   claim against Billbe may not be premised on the decision not to pursue rescission of the

18   prenuptial agreement.

19        Moreover, even if Billbe had argued for rescission, the result of the dissolution

20   proceeding would have been the same, and LaRoche has not demonstrated a triable issue

21   concerning proximate cause.  The cause-in-fact analysis required in this case is similar to

22   the evaluations necessary in _Daugert_ and _Nielsen_, namely an assessment of how the

23

ORDER - 10

1    tribunal in the underlying matter would have decided an issue of law.  This inquiry is for

2    the Court, not a jury.  _Daugert_, 104 Wn.2d at 258.  With regard to the equitable remedy

3    of rescission by conduct,[3] the ways in which Hoffman is alleged to have disregarded the

4    prenuptial agreement are:  (i) depositing community income into separate accounts;

5    (ii) discontinuing required contributions to a retirement account in LaRoche's name; and

6    (iii) using community property to improve the Woodinville house, which Hoffman owed

7    before, and sold during, the marriage.  _See_ Respondent/Cross-Appellant Brief at 48-49,

8    Ex. 13 to Billbe Decl. (docket no. 18-1).  The Court is satisfied that the King County

9    Superior Court would not have found these grounds for rescission persuasive.

10           Indeed, the King County Superior Court rejected the first accusation concerning

11   the commingling of community and separate property.  During trial on the dissolution

12   matter, Billbe offered, on behalf of LaRoche, the expert testimony of Christien L.

13   Drakeley, J.D., Ph.D, who traced how certain funds, including Hoffman's wages from the

14   University of Washington ("UW"), flowed through the complex portfolio of assets owned

15   by Hoffman and LaRoche.  _See_ Exs. B & C to Waid Decl. (docket nos. 22-2 & 22-3).  In

16   connection with the pending motion, neither party has provided a complete transcript of

17   the King County Superior Court's oral ruling, but according to Billbe, the state court

18   found the opinion of Hoffman's expert, Steven J. Kessler, CPA, more convincing, and

19

20   _____

21   [3] Although the published authorities of _Fox_ and _Sanchez_ place the burden of proving "strict observance"
     of the prenuptial agreement on the party trying to enforce it, 58 Wn. App. at 938; 33 Wn. App. at 218, an
     unpublished decision suggests that the burden of establishing rescission by conduct is on the party
22   seeking to invalidate the agreement.  _In re Estate of Elvidge_, 2007 WL 4239791 at *5 (Wash. Ct. App.
     Dec. 4, 2007).

23

ORDER - 11

1  concluded that "the community benefitted from all of the community income" as well as

2  from separate funds used to subsidize Hoffman's wages to "maintain the standard of

3  living during the marriage."  Billbe Dep. at 34:21-35:15, Ex. A to Waid Decl. (docket

4  no. 22-1).  Moreover, the judge did not believe any commingling was relevant to the final

5  division of assets.  *See id.* at 35:11-15 ("the fact that some community income, be them

6  UW wages, for example, went through an account where also trust monies went was the

7  tail wagging the dog, and . . . the court wasn't persuaded that that commingling was

8  important to her final decision").  LaRoche does not dispute that the King County

9  Superior Court discounted the allegation of commingling, and she makes no contention

10  that she has any evidence of commingling other than what was considered during the

11  dissolution proceeding.

12      With regard to the other two allegations relating to rescission, *i.e.*, that Hoffman

13  ceased making required contributions to a retirement account for LaRoche's benefit, and

14  used community assets, including LaRoche's labor, to improve his Woodinville house,

15  the Court is persuaded that the King County Superior Court would not have viewed these

16  breaches of the prenuptial agreement as evidence of mutual intent to abandon it.  In this

17  case, at least one party, namely LaRoche, abided by the terms of the prenuptial agreement

18  and never took steps to modify it.  LaRoche Dep. at 188:15-19, 188:25-189:1, 190:4-24,

19  Ex. 3 to Billbe Decl. (docket no. 18).  The Court therefore concludes that, even if the

20  rescission theory had been raised during the dissolution proceedings, the King County

21  Superior Court would have done exactly what it did, namely calculate the damages

22  resulting from the breaches of the prenuptial agreement and require Hoffman to

23

ORDER - 12

1   compensate LaRoche in such amount.  *See* Exs. 9 and 10 to Billbe Decl. (docket

2   no. 18-1) (awarding LaRoche $75,000 for the increase in value of the Woodinville house,

3   $5,500 as reimbursement for her labor in preparing the Woodinville house for sale, 60%

4   of the community portion of Hoffman's UW TIAA/CREF retirement account (roughly

5   $228,860), a Smith Barney IRA valued at $13,518, which had been Hoffman's separate

6   property, and a Smith Barney IRA valued at $9,643).

7          Given the extensive nature of Hoffman's separate property, consisting of a

8   residence in Sun Valley worth over $1.5 million, investment and trust accounts with an

9   aggregate balance exceeding $12 million, retirement accounts containing $1.58 million,

10  certain stock, share of a sailboat, and a timeshare interest, *see* Ex. 9 to Billbe Decl.

11  (docket no. 18-1 at 60-61), the Court concludes that the minor ways in which Hoffman

12  deviated from the provisions of the prenuptial agreement would not have convinced the

13  King County Superior Court to grant LaRoche the equitable remedy of rescission.  This

14  case is entirely different from *Fox* and *Sanchez*, in which the failures to comply with the

15  terms of the prenuptial agreement were mutual and involved virtually all of the parties'

16  assets.  To invalidate the prenuptial agreement in this matter on the minimal showing that

17  LaRoche could have made, *i.e.*, unilateral as opposed to mutual departures from the

18  agreement involving relatively small sums, and thereby permit LaRoche to seek an equal

19  share of Hoffman's extensive assets, would have been inconsistent with the notions of

20

21

22

23

ORDER - 13

1  equity underlying the theory of rescission.[4]  The Court therefore HOLDS as a matter of

2  law that Billbe's decision not to advance the theory of rescission was appropriate and did

3  not fall below the applicable standard of care, and that it was not the proximate "but for"

4  cause of any damages sustained by LaRoche.

5  **Conclusion**

6       For the foregoing reasons, defendants' motion for partial summary judgment,

7  docket no. 17, is GRANTED.  Plaintiff's claim pleaded as Paragraph 4.1(A) of the

8  Complaint, docket no. 1, is DISMISSED with prejudice.  Plaintiff's claim pleaded as

9  Paragraph 4.1(C) of the Complaint, to the extent it is based on the allegations in

10  Paragraphs 3.15, 3.16, and 3.17 of the Complaint, is DISMISSED in part with prejudice.

11  Defendants' motion does not address the additional contentions in the Complaint

12  regarding alleged malpractice on the part of Billbe, and those issues must await further

13  proceedings in this case.

14       IT IS SO ORDERED.

15       Dated this 17th day of July, 2014.

16

17  THOMAS S. ZILLY
United States District Judge

18  _____

19  [4] As noted by the Washington State Court of Appeals, the ways in which the prenuptial agreement was intended to protect LaRoche's interests did not "play[ ] out as well as she might have hoped at the time

20  she signed the agreement."  2012 WL 1699455 at *3.  The lawsuit that had been pending before the marriage settled without a financial award to LaRoche, she chose not to work for most of the marriage and therefore did not acquire separate earnings, and as a result of legal restrictions, Hoffman could not

21  continue contributing to the retirement account for LaRoche's benefit.  _Id._  These developments, which were not anticipated at the time the prenuptial agreement was executed, and are only apparent with the

22  benefit of hindsight, do not constitute a basis in equity for rescission.

23

ORDER - 14