UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLE LAROCHE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TED D. BILLBE, et al.,<br><br>　　　　　Defendants. | C13-1913 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 47, and plaintiff's cross-motion for summary judgment, docket no. 67.  Having reviewed all papers filed in support of and in opposition to each motion, the Court enters the following order.

**Discussion**

Plaintiff Carole LaRoche brings this legal malpractice action against her former attorney, Ted. D. Billbe, who represented her in dissolution proceedings against Alan Hoffman.  The Court has already granted partial summary judgment in favor of defendants and dismissed plaintiff's claims premised on the theory that Billbe should have, but did not argue for rescission of the prenuptial agreement between LaRoche and Hoffman.  *See* Order (docket no. 30).  LaRoche's remaining malpractice claims are based

ORDER - 1

on (i) alleged misstatements of fact by Billbe to the King County Superior Court; (ii) Billbe's failure to request certain relief for LaRoche; and (iii) "[s]uch other and different breaches of fiduciary duty as may be identified during discovery and/or trial of this matter." Am. Compl. at ¶¶ 4.1(B)-(D) (docket no. 62); see also Pla.'s Resp. & Cross-Mtn. (docket no. 67).

With respect to the remaining claims, LaRoche's expert, Emmelyn Hart, has opined that Billbe's representation fell below the applicable standard of care in only two respects: (i) requesting substantially less than all of the attorney fees and costs incurred by LaRoche in the dissolution proceedings; and (ii) failing to advise LaRoche in advance of his intent to seek only $75,000 of the roughly $150,000 accrued in attorney fees and costs. See Hart Report, Ex. 1 to Expert Disclosure (docket no. 34-1); Hart Decl. at ¶ 5(D), Ex. 13 to LaRoche Decl. (docket no. 66-13) (previously filed as docket no. 23). To the extent that LaRoche contends Billbe's legal services were deficient in any respects other than the two stated by Hart, such claims lack evidentiary support and are hereby dismissed.

The only allegation of malpractice, other than the two identified by Hart, that is discussed in plaintiff's response to defendants' motion for summary judgment involves Billbe's efforts at trial to prove that Hoffman had commingled community and separate assets. Hart has expressed no opinion concerning whether Billbe's efforts in this regard were anything other than competent. Thus, LaRoche presents no triable issue. See Geer v. Tonnon, 137 Wn. App. 838, 851, 155 P.3d 163 (2007) (observing that "[e]xpert testimony is often required to determine whether an attorney's duty of care was breached

ORDER - 2

1   in a legal professional negligence action"). The Court notes that, in a preface to her oral
2   ruling, King County Superior Court Judge Carol A. Schapira observed that the case had
3   been "well-tried" by Billbe and the opposing attorney. <u>See</u> Tr. at 943 (Aug. 26, 2010),
4   Ex. 10 to Billbe Decl. (docket no. 33-11 at 58). In addition, while announcing her
5   decision about the division of property between LaRoche and Hoffman, Judge Schapira
6   emphasized that the community had "greatly overspent" its income and had received
7   "substantial supplementation" from Hoffman's separate assets. <u>Id.</u> at 951-52 (docket
8   no. 33-11 at 66-67). Judge Schapira therefore saw no need to trace community and
9   separate assets "with mathematical precision." <u>Id.</u> at 950 (docket no. 33-11 at 65).

10      With regard to Billbe's tactical decision to request only $75,000 in attorney fees
11  and costs for LaRoche and his alleged failure to discuss this approach in advance with
12  LaRoche, the applicable standard is whether Billbe's judgments were "within the range
13  of reasonable choices" that a "reasonable, careful and prudent attorney in Washington"
14  would make. <u>See Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.</u>, 180
15  Wn. App. 689, 706, 324 P.3d 743 (2014). RCW 26.09.140 authorizes a court to order a
16  party in a dissolution proceeding to pay the other party's reasonable attorney fees and
17  costs, after "considering the financial resources of both parties" or, in other words, "the
18  parties' relative need and ability to pay." <u>E.g.</u>, <u>In re Marriage of Shellenberger</u>, 80 Wn.
19  App. 71, 87, 906 P.2d 968 (1995). The decision whether to award and how much to
20  award in attorney fees pursuant to RCW 26.09.140 is entirely discretionary, and such
21  decision will be upheld unless it was "clearly untenable or manifestly unreasonable."
22  <u>Abel v. Abel</u>, 47 Wn.2d 816, 819, 289 P.2d 724 (1955).
23

ORDER - 3

Judge Schapira concluded that LaRoche had a financial need for, and Hoffman had the ability to pay, court-ordered fees, and she awarded LaRoche $70,000. Findings of Fact and Conclusions of Law ("Findings"), Ex. 3 to LaRoche Decl. (docket no. 66-3). On LaRoche's behalf, Billbe unsuccessfully moved for reconsideration of the attorney fee award. See Ex. 2 to Rosenberg Decl. (docket no. 82-2). In a declaration filed in support of the motion for reconsideration, LaRoche indicated that, although she testified at trial her estimated attorney fees and costs would be just over $120,000, her actual fees and costs exceeded $150,000, which included a $10,000 retainer paid to her prior attorney about which she had not previously advised Billbe. LaRoche Decl. at ¶¶ 1-3, Ex. 1 to Rosenberg Decl. (docket no. 82-1). LaRoche further explained that Billbe's request for only $75,000 in attorney fees was made in conjunction with a suggested property award of $1.6 million along with spousal support, but that Judge Schapira's significantly lower property award and denial of spousal maintenance rendered a higher attorney fee award appropriate. Id. at ¶¶ 4-5.

Hart, LaRoche's expert, has opined that "[n]o reasonable Washington lawyer would have made the same decision as Mr. Billbe [to request only $75,000] given the well-established case law determining the issue [of attorney fees and costs in dissolution proceedings]." Hart Report at 6 (docket no. 34-1). Hart has further opined that Billbe's alleged failure to keep LaRoche "reasonably informed" about his intent to "abandon a portion of her attorney fees and costs" fell below the applicable standard of care, citing Washington Rule of Professional Conduct ("RPC") 1.4. Id. at 6-7. In contrast, Billbe's expert, Kenneth E. Brewe, indicates that Billbe's representation "cannot be reasonably

ORDER - 4

argued" to have fallen below the standard of care. Brewe Rebuttal Report at 4 (docket no. 46-1). Brewe disagrees with the proposition that no reasonable lawyer would have requested less than all of the incurred fees and costs, after taking into account the "entire litigation puzzle." *Id.* He also disputes that Billbe failed to keep LaRoche "reasonably informed," and he challenges Hart's interpretation of RPC 1.4, which does not, according to Brewe, require an attorney to obtain informed consent for every litigation decision.[1] *Id.* at 6-8.

The Court does not view the conflict between Hart's and Brewe's opinions as presenting a genuine issue of material fact precluding summary judgment. *See* Fed. R. Civ. P. 56(a). In formulating her opinion, Hart did not even consider the declaration LaRoche submitted to Judge Schapira. *See* Hart Report at § V (docket no. 34-1). Hart's assertions that Billbe's tactical decisions were not within the range of those a reasonable Washington attorney would have made and that Billbe failed to inform LaRoche of his strategies are contradicted by LaRoche's own declaration, which was filed over three years before she initiated this lawsuit. In addition, despite Hart's meritless beliefs to the contrary, the Court concludes as a matter of law that, given the substantial property award sought by LaRoche, as well as spousal support, Billbe acted well within the applicable

---

[1] Defendants contend that a legal malpractice claim cannot be premised on a violation of the Rules of Professional Conduct, citing *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992). The Court does not read *Hizey* so broadly. Although *Hizey* prohibits any reference to the Rules of Professional Conduct in jury instructions and expert testimony because they "were never intended as a basis for civil liability" and "provide only vague guidelines," *id.* at 261-66, the decision acknowledges that experts "may still properly base their opinion . . . on an attorney's failure to conform to an ethics rule," so long as the expert addresses "the breach of the *legal* duty of care, and not simply the supposed breach of the ethics rules," *id.* at 265 (emphasis in original).

ORDER - 5

standard of care in seeking over sixty percent (60%) of LaRoche's then-estimated attorney fees and costs. Billbe's performance cannot be judged with the benefit of hindsight, but rather must be assessed from the perspective of a reasonable attorney making a request under RCW 26.09.140, not knowing exactly how the community's assets would be divided.

Even if LaRoche could, however, show that Billbe breached a duty of care owed to her, she could not prevail at trial. LaRoche must also establish a causal link between any such breach and the damage she incurred. *E.g.*, <u>Hizey v. Carpenter</u>, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). She has failed to do so. Although Hart opines that Billbe's performance fell below the applicable standard of care, Hart does not indicate that, but for Billbe's alleged mishandling of the issue, LaRoche would have received a higher award of attorney fees and costs. <u>See Daugert v. Pappas</u>, 104 Wn.2d 254, 260-63, 704 P.2d 600 (1985) (adhering to the "but for" standard of causation for legal malpractice claims). In fact, despite Judge Schapira's comment that she "might have even awarded more [in attorney fees and costs] if that figure [of $75,000] had not been mentioned," Tr. at 955 (docket no. 66-12),[2] Judge Schapira granted even less in attorney fees and costs than were requested by Billbe, <u>see id.</u> at 956 (awarding only $70,000). In doing so,

---

[2] Given the context of her remarks, the Court is persuaded that Judge Schapira was attempting to appease Hoffman, who would be required to pay the fees, rather than suggesting she would have awarded more had it been requested. After announcing that she would grant $75,000, Judge Schapira explained, "this is no criticism of anybody, but in terms of need and ability to pay. This is -- I think it was a fair thing to ask for. I might have even awarded more if that figure had not been mentioned. We know that the actual attorney's fees are much bigger." Tr. at 955 (docket no. 66-12). In essence, Judge Schapira was telling Hoffman and his attorney that the award was not a sanction, <u>see Mattson v. Mattson</u>, 95 Wn. App. 592, 604, 976 P.2d 157 (1999) (indicating that a party's intransigence can form the basis of an attorney-fee award in a dissolution proceeding), and that the $75,000 request was reasonable.

ORDER - 6

Judge Schapira expressly acknowledged that LaRoche had incurred more in fees and costs ($120,000) than was being awarded. Findings at ¶ 2.15 (docket no. 66-3).

Moreover, any causal connection between Billbe's initial request for $75,000 and LaRoche's alleged damage was destroyed by Billbe's subsequent unsuccessful motion for reconsideration. LaRoche does not in the present case challenge the adequacy of Billbe's performance in crafting or presenting the motion for reconsideration. Judge Schapira was fully apprised of the reasons supporting a higher award of attorney fees and costs, but nevertheless denied the request, thereby severing any link between Billbe's allegedly deficient conduct and LaRoche's damage. In light of Judge Schapira's denial of the motion for reconsideration, any assertion that, but for Billbe's "lowball" figure and alleged failure to obtain LaRoche's consent to it, LaRoche would have received more in attorney fees and costs is pure speculation. LaRoche has not shown that a rational trier of fact could find for her at trial on her remaining claims, and the Court therefore GRANTS defendants' motion for summary judgment. See _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986); _see also_ Fed. R. Civ. P. 56(a).

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

(1) Defendants' motion for summary judgment, docket no. 47, is GRANTED;

(2) Plaintiff's cross-motion for summary judgment, docket no. 67, is DENIED;

(3) Plaintiff's remaining legal malpractice claims are DISMISSED with prejudice;

ORDER - 7

(4) Plaintiff's motion to avoid lien, docket no. 69, and the related motion filed by attorney Brian J. Waid for leave to submit a surreply, docket no. 76, are STRICKEN as moot;

(5) Defendants' motions in limine, docket no. 78, are STRICKEN as moot; and

(6) The Clerk is DIRECTED to enter judgment consistent with this Order and the Order entered on July 18, 2014 (docket no. 30), and to send a copy of this Order to all counsel of record and to plaintiff pro se.

Dated this 4th day of February, 2015.

Thomas S. Zilly
United States District Judge

ORDER - 8